UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARNELL R. HICKS,

*Plaintiff*,

v.

JAMES HAZEL, #151, BALLEN, #172, *and* VILLAGE OF OSSINING,

*Defendants*.

No. 25-CV-2178 (KMK)

OPINION & ORDER

Appearances:

Darnell R. Hicks
Kingston, NY
*Pro Se Plaintiff*

John J. Walsh II, Esq.
Michael K. Burke, Esq.
Saad Siddiqui, Esq.
Hodges Walsh & Burke LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Darnell Hicks ("Plaintiff"), proceeding pro se, brings this Action against Officer James Hazel ("Hazel"), Officer Francisco Ballen ("Ballen"), and the Village of Ossining (the "Village") (collectively "Defendants"), pursuant to 42 U.S.C. § 1983, alleging claims of false arrest, malicious prosecution, and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See generally* Compl. (Dkt. No. 3).) Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 34).) For the reasons set forth below, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule 56.1, (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 36)), Plaintiff's response, (Pl.'s Resp. to Defs.' Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 45)), and the admissible evidence submitted by the Parties.[1] Defendants submitted a notice to Plaintiff pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York. (Dkt. No. 35). The facts are undisputed unless otherwise noted and are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation and quotation marks omitted).

Plaintiff is a video streamer and self-described activist who records and posts videos of police encounters on social media websites. (*See* Aff'n in Supp. of Defs.' Mot. for Summ. J. ("Siddiqui Aff'n") (Dkt. No. 38) Ex. A ("Pl.'s Tr.") 28:1–29:10 (describing Plaintiff's work as a streamer and the platforms he uses).) Hazel and Ballen are police officers employed by the Village of Ossining Police Department. (Defs.' ¶¶ 56.1 2–3; Pl.'s 56.1 ¶¶ 2–3.) The Village of

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009) (same). Where possible, the Court relies on the facts as presented in the Parties' 56.1 statements. However, direct citations to the record are used where the Parties' 56.1 statements do not include relevant facts or do not accurately characterize the record.

Ossining is a municipal entity organized under the laws of the State of New York. (Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.)

The events giving rise to this Action took place on March 8, 2025 in Ossining, New York. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5.) Around 8:12 p.m., Plaintiff, who had parked his vehicle on the side of a street, approached Hazel and non-party Officer Villegas' ("Villegas") squad car, which was idling on the opposite side of the street. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5; *see also* Siddiqui Aff'n Ex. D-1 ("Hazel BWC 1") 20:12:04–20:14:15 (showing Plaintiff approach Hazel and Villegas' squad car).)[2] Hazel instructed Plaintiff to move his vehicle because it was parked in a no parking zone, but Plaintiff refused. (Defs.' 56.1 ¶¶ 5–7; Pl.'s 56.1 ¶ 5; *see also* Pl.'s Tr.

---

[2] Both Parties have submitted video exhibits in this Action. When referencing Defendants' videos, the Court cites to the time stamp in the upper right-hand corner of the video. When referencing Plaintiff's video ("Pl.'s Video"), which does not include time stamps, the Court cites to the corresponding run time displayed in the progress bar at the bottom of the video player.

Although Plaintiff argues Defendants' videos of his initial exchange with Hazel "approximately [20] minutes" prior to his arrest are "irrelevant" in determining whether Defendants had probable cause, (Pl.'s Supp. Mem. of Law 1 (Dkt. No. 46)), it is well established that "[a] court assessing probable cause must 'examine the events leading up to the arrest[,]'" *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)), and these videos depict the events leading up to Plaintiff's arrest, *see Schlaepfer v. City of New York*, No. 20-CV-3339, 2022 WL 4484571, at *11 (S.D.N.Y. Sept. 27, 2022) (considering video evidence of "the circumstances leading up to [the plaintiff's] arrest, as well as the arrest itself" when evaluating probable cause at summary judgment). Plaintiff's additional assertion that these videos are "unfairly prejudicial and misleading . . . [and] function as [improper] propensity evidence[,]" (Pl.'s Supp. Mem. of Law 1), is similarly unpersuasive because "the reason for excluding evidence that is unfairly prejudicial (because it may inflame the jury) is simply not present at the summary judgment phase[,]" *S.E.C. v. McGinnis*, No. 14-CV-6, 2015 WL 5643186, at *15 n.12 (D. Vt. Sept. 23, 2015) (citation omitted); *see also Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 374 (S.D.N.Y. 2024) (declining to exclude evidence "on the basis of relevance and prejudice" because "while it is not unheard of to exclude evidence under Rule 403 at the summary judgment stage, the balancing process contemplated by that rule is best undertaken at trial itself." (quotation marks and citation omitted)).

75:22–76:4 ("Q: When you were parked on the side of the road, they told you, you were parked in a no-parking area[,] correct? A: Yes Q: Okay. And they asked you to move your car[,] right? A: Yes").) Hazel and Villegas subsequently exited their squad car, and Hazel repeatedly instructed Plaintiff to return to his vehicle and move it. (*See* Siddiqui Aff'n Ex. D-1 ("Hazel BWC 1") 20:12:04–20:13:21 (showing Hazel repeatedly telling Plaintiff to return to his vehicle and move it); Siddiqui Aff'n Ex. D-5 ("Villegas BWC 1") 20:12:47–20:14:50 (same).) In response, Plaintiff repeatedly called Hazel a "bitch," "bitch ass," and "pussy" and told Hazel to "suck my dick," "suck a dick," among other obscene and derogatory statements, before getting in his car and driving off. (*See* Siddiqui Aff'n Ex. D-2 ("Hazel BWC 2") 20:19:09–20:21:48 (showing Hazel repeatedly telling Plaintiff to move his vehicle and Plaintiff's reaction); Villegas BWC 1 20:12:47–20:14:50 (same).)

Plaintiff subsequently got out of his car and entered the nearby police station, where he told the desk officer that other officers had been following his car and asked to speak with a sergeant because he did not feel safe. (Pl.'s 56.1 ¶¶ 6–7; *see also* Pl.'s Video 0:00:00–0:01:06 (showing Plaintiff's interaction with the desk officer inside the station).) After the desk officer informed Plaintiff that the sergeant was not available, Plaintiff exited the station and walked approximately one and a half blocks before he encountered Ballen pulling out of a parking lot in his squad car. (*See* Pl.'s Video 0:01:17–0:02:06 (showing Plaintiff exit the station, turn left, and walk down the sidewalk before stopping at Ballen's squad car).) Plaintiff then accused Ballen of following him and demanded Ballen's name and badge number, which Ballen provided. (*Id.* 0:02:15–0:02:43.) Plaintiff continued to ask Ballen why he was following Plaintiff, which Ballen denied, explaining that "this is [his] [patrol] sector." (*Id.* 0:02:43–0:02:52.) Plaintiff then appeared to threaten Ballen with a federal lawsuit, stating he would "get these video cameras to

show that [Ballen] is following [him]" and would "see [Ballen] [on] Monday" because "on Monday [Ballen] will be in federal court with this one." (*Id.* 0:02:52–0:03:07.)

While Plaintiff was talking to Ballen, Hazel and Villegas pulled up in their squad car, and Hazel asked if everything was okay. (*Id.* 0:03:07–0:03:15.) Hazel then told Plaintiff to "move," and after Plaintiff refused to do so, Hazel exited the passenger side of his squad car and instructed Plaintiff to put his hands behind his back. (*Id.* 0:03:07–0:03:33; Siddiqui Aff. Ex. D-3 ("Hazel BWC 3") 20:32:41–20:33:00.) Plaintiff then handed his phone to a non-party friend who had accompanied him that evening, and Plaintiff can be heard saying "this is a bullshit charge" and using other obscene and profane language while the officers are handcuffing him. (*Id.* 0:03:15–0:05:00; *see also* Hazel BWC 3 20:35:05–20:35:30 (recording Plaintiff referring to Hazel as a "bitch" and using other profanity); Siddiqui Aff. Ex. D-7 ("Villegas BWC 3") 20:33:13–20:34:23 (recording Plaintiff using profane and obscene language throughout his arrest).) At one point, the officers told Plaintiff he was obstructing traffic, and he became agitated, yelling that it was Ballen who was holding up traffic. (*Id.* 0:04:12–0:04:29.) Plaintiff was subsequently placed in the back of a squad car and could be heard calling Hazel a "bitch" and using other derogatory and profane language before being driven away. (*Id.* 0:05:00–0:06:18; Hazel BWC 3 20:35:05–20:35:30; Villegas BWC 3 20:33:13–20:34:23.)

Plaintiff was charged with disorderly conduct, issued a Desk Appearance Ticket, and released. (Defs.' 56.1 ¶¶ 36–37, 40; Pl.'s 56.1 ¶¶ 36–37, 40.) As of October 15, 2025, Plaintiff's disorderly conduct case remained pending in Westchester County Court. (*See* Defs.' 56.1 ¶¶ 42–43 (asserting Plaintiff's motions to dismiss his disorderly conduct case had been denied) ; Pl.'s 56.1 ¶¶ 42–43 (claiming Plaintiff does not know the status of his disorderly conduct case but

acknowledging the denial of his motions to dismiss it); *see also* Siddiqui Aff'n Ex. C (discussing the status of Plaintiff's disorderly conduct case with the prosecuting attorney).[3]

B. Procedural Background

Plaintiff initiated this Action by filing his Complaint on March 12, 2025, (*see generally* Compl.), along with a request to proceed in forma pauperis, that is, without the prepayment of fees, (*see* Application to Proceed Without Prepaying Fees or Costs (Dkt. No. 1)), which the Court granted on March 20, 2025, (*see* Order Granting IFP Application (Dkt. No. 4)). On April 7, 2025, the Court directed the U.S. Marshals to serve Defendants. (*See* Order of Service (Dkt. No. 8).) Ballen and Hazel were served on May 21, 2025, and the Village waived service. (*See* Marshal's Process Receipt & Return of Service (Dkt. No. 17); Marshal's Process Receipt & Return of Service (Dkt. No. 18); Waiver of Service (Dkt. No. 14).)

Defendants filed their Answer to Plaintiff's Complaint on June 2, 2025. (*See* Answer (Dkt. No. 15).) On July 23, 2025, the Court entered a Case Management Plan and Scheduling Order, and the Parties proceeded to discovery. (*See* Case Management Plan & Scheduling Order (Dkt. No. 23).) On December 16, 2025, Defendants submitted a pre-motion letter requesting leave to file a motion for summary judgment, (*see* Letter from Saad Siddiqui, Esq. (Dec. 16, 2025) (Dkt. No. 28).) In response, the Court set a briefing schedule. (*See* Memo Endorsement (dated Dec. 18, 2025) (Dkt. No. 31).)

Defendants filed their Motion for Summary Judgment on January 22, 2026. (*See* Not. of Mot.; Not. to Pro Se Litigant Pursuant to Local Civil Rule 56.2 (Dkt. No. 35); Defs.' 56.1; Aff.

[3] The Court is unable to verify the status of Plaintiff's disorderly conduct case using either of the docket numbers provided by Defendants. (*See* Siddiqui Decl. Ex. C (providing two docket numbers in conjunction with Plaintiff's disorderly conduct case). However, neither Plaintiff nor Defendants have informed the Court of its termination. (*See generally* Dkt.)

of Lt. Patrick McGovern in Supp. of Mot. (Dkt. No. 37); Siddiqui Aff.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 39).) That same day, Plaintiff submitted his Opposition. (*See* Decl. of Darnell R. Hicks in Opp'n to Mot. for Summ. J. ("Pl.'s Decl. Opp'n") (Dkt. No. 43); Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") (Dkt. No. 44); Pl.'s 56.1.) On January 25, 2026, Plaintiff filed a supplemental brief opposing Defendants' submission of body worn camera footage from approximately 20 minutes before his arrest. (*See* Pl.'s Supp. Mem. of Law 1.) On January 28, 2026, Plaintiff filed additional briefing regarding Defendants' submission of body worn camera footage. (*See* Decl. of Darnell R. Hicks (Dkt. No. 47); Pl.'s Rule 56.1 Counter-Statement of Material Facts (Dkt. No. 48); Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Supp. Mem.") (Dkt. No. 49); Supp. Decl. of Darnell R. Hicks (Dkt. No. 50).) On March 6, 2026, Defendants filed their Reply. (*See* Reply Aff. of Saad Siddiqui, Esq. (Dkt. No. 51); Defs.' Reply Mem. of Law in Supp. ("Defs.' Reply") (Dkt. No. 52); Aff. of Service (Dkt. No. 53).) On March 13, 2026, Defendants filed a notice of supplemental authority. (*See* Letter from Saad Siddiqui, Esq. to Court (Mar. 13, 2026) (Dkt. No. 54).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that

no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should "consider[] only evidence that would be admissible at trial." *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr*., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court should construe "the submissions of a pro se

litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).

B. Analysis

Defendants argue Plaintiff's false arrest and malicious prosecution claims fail because they had probable cause to arrest him, (Defs.' Mem. 3–8), and, in the alternative, that they are entitled to qualified immunity, (*id.* 9–10). Additionally, they assert that Plaintiff's malicious prosecution claim fails because he cannot establish favorable termination as required to bring a malicious prosecution claim. (*Id*. 8). Lastly, Defendants argue Plaintiff's claims against the Village fail because Plaintiff has not alleged an underlying Constitutional violation or unconstitutional policy, custom, or practice as required to establish *Monell* liability. (*Id.* 8–9.)

1. False Arrest

A Section 1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 505 (S.D.N.Y. 2023) (same). A Section 1983 false arrest claim incorporates the elements of a false arrest claim under state law. *Parrish v. Orange Cnty. Law Enf't Agency-M.P.D.*, No. 25-CV-1674, 2025 WL 2977797, at *5 (S.D.N.Y. Oct. 20, 2025) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). New York law requires a plaintiff alleging false arrest to show "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 224 (S.D.N.Y. 2022) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). "[T]he existence of probable

cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under [Section] 1983." *Dillon v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at *3 (S.D.N.Y. Sept. 28, 2022) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest . . . will defeat a claim of false arrest under the Fourth Amendment."). "A 'claim for false arrest turns only on whether probable cause existed to arrest a defendant' and not 'whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of [the] arrest.'" *Santiago v. City of Rochester*, No. 19-CV-6860, 2024 WL 4289600, at *5 (W.D.N.Y. Sept. 25, 2024) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)); *see also Jaegly v. Couch*, 439 F.3d 149, 150 (2d Cir. 2006) ("[A] claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime.").

Generally speaking, officers have probable cause to arrest when they have "reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson*, 702 F.3d at 19 (quotation marks, alterations, and citation omitted). As the Second Circuit observed:

> To determine the existence of probable cause, a court considers the totality of the circumstances, based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest. The court considers those facts available to the officer at the time of the arrest and immediately before it. The significance of each of these factors may be enhanced or diminished by surrounding circumstances.

*Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (quotation marks and citations omitted). It is also well established that "police officers have probable cause to arrest when they personally observe a person commit a crime in their presence." *Tortora v. City of New York*, No.

15-CV-3717, 2019 WL 9100369, at *14 (E.D.N.Y. Mar. 30, 2019) (citing *Ackerson*, 702 F.3d at 20, and *United States v. Scopo*, 19 F.3d 777, 781–82 (2d Cir. 1994)).

There is no dispute as to the first and second elements of Plaintiff's false arrest claim, as Hazel and Ballen clearly intended to arrest Plaintiff and Plaintiff knew he was being detained. (*See generally* Defs.' 56.1; Pl.'s 56.1; Defs.' Mem.; Pl.'s Mem.) "The question for the Court, then, is whether there is any genuine issue of material fact as to 'whether a reasonably cautious person' in [the arresting officer's] position, 'at the time he' arrested [Plaintiff], 'would have been justified in believing that' [Plaintiff] had committed an offense." *Brandon v. City of New York*, No. 20-CV-7784, 2023 WL 4828170, at *4 (S.D.N.Y. June 6, 2023) (quoting *Ali v. City of New York*, No. 11-CV-5469, 2012 WL 3958154, at *1 (S.D.N.Y. Sept. 5, 2012)), *report and recommendation adopted*, 2023 WL 4824853 (S.D.N.Y. July 27, 2023), *aff'd sub nom. Brandon v. Khan*, No. 23-1168, 2024 WL 4100520 (2d Cir. Sept. 6, 2024).

Plaintiff was charged with disorderly conduct in violation of New York Penal Law § 240.20 ("Section 240.20"). Under New York law, "[d]isorderly conduct has three elements: the defendant's conduct (1) must match at least one of the descriptions set forth in the statute'; (2) be public in nature; and (3) 'be done with intent to cause inconvenience, annoyance, or alarm or with recklessness as to a risk thereof." *Smith v. City of New York*, No. 18-CV-5079, 2021 WL 4267525, at *9 (S.D.N.Y. Sept. 20, 2021) (quotation marks omitted) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001)). The statute provides, in relevant part, that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . [i]n a public place, he uses abusive or obscene language[;] [or] . . . obstructs vehicular or pedestrian traffic . . . ." N.Y. Penal Law §§ 240.20(3), (5). As explained below, even when viewed in the light most favorable to

Plaintiff, there is sufficient, undisputed evidence to conclude that Hazel and Ballen had probable cause to arrest Plaintiff for disorderly conduct.

It is undisputed that Plaintiff "used profanity" and "derogatory term[s]" when speaking to Hazel, (Defs.' 56.1 ¶¶ 9–10; Pl.'s 56.1 ¶¶ 9–10), including, *inter alia*, repeatedly telling Hazel and Ballen to "suck my dick," "suck a dick," and calling Hazel and Ballen a "pussy," "punk ass," "bitch," "bitch ass," and other obscenities, (Hazel BWC 2 20:19:09–20:20:40; Hazel BWC 3 20:35:05–20:35:30; Villegas BWC 2 20:19:10–20:25:09; Villegas BWC 3 20:33:13–20:34:23). It is also undisputed that these events "occurred in a public place[,]" (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14). Accordingly, Plaintiff's actions fall squarely within the conduct proscribed by Section 240.20(3), which prohibits the "us[e] [of] abusive or obscene language" in a "public place," so the first two elements of disorderly conduct are met. *See Smith*, 2021 WL 4267525, at *9 (finding the first two elements of disorderly conduct satisfied when undisputed evidence showed the plaintiff yelling "obscenities at [police] officers from across the street, including . . . 'fuck you guys' and 'fuck the police'" while standing "on a public sidewalk"); *Hughes v. Lebron*, No. 14-CV-9479, 2016 WL 5107030, at *8 (S.D.N.Y. Sept. 19, 2016) (finding that the plaintiff's "expletive-laden tirade against [the defendant officer] in the [c]ourthouse lobby . . . falls squarely within the scope of" Section 240.20(2)–(3)).

As to the third element, "to determine whether the record supports an inference that the requisite mens rea [for disorderly conduct] was present, courts apply a 'contextual analysis,' considering 'the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances.'" *Smith*, 2021 WL 4267525, at *9 (quoting *People v. Baker*, 984 N.E.2d 902, 906 (N.Y. 2013));

*see also People v. Persen*, 128 N.Y.S.3d 340, 347 (App. Div. 2020) (same). Although Plaintiff asserts that "disorderly conduct requires conduct creating public inconvenience, annoyance, or alarm, such as an actual obstruction of pedestrian traffic or other objective disruption[,]" (Pl.'s Mem. 2), it is well established that an individual "may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance, or alarm' as long as the conduct 'recklessly creates a risk of such public disruption[,]" *Hughes*, 2016 WL 5107030, at *8 (citation and quotation marks omitted); *see also United States v. Nelson*, 500 F. App'x 90, 94 (2d Cir. Oct. 19, 2012) (summary order) (affirming the lower court's finding of probable cause because the defendant's "combative tone and abusive language, coupled with the [public] location of the incident, were 'sufficient to warrant a person of reasonable caution in the belief' that [the defendant] was recklessly creating the [risk of public inconvenience, annoyance, or alarm]" (quoting *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008)); *People v. Weaver*, 944 N.E.2d 634, 635 (N.Y. 2011) ("We have made clear that a defendant may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance or alarm if the conduct recklessly creates a risk of such public disruption.").

Here, Plaintiff's conduct and the surrounding circumstances make it objectively reasonable for Defendants to have believed that Plaintiff, at the very least, recklessly created a risk of "public inconvenience, annoyance or alarm." N.Y. Penal Law § 240.20. The evidence indisputably reflects that Plaintiff was standing in the middle of a public sidewalk, cursing, using obscene language, and generally being "loud, combative, and antagonistic during his encounter with [Defendants]." *Smith*, 2021 WL 4267525, at *10 (citation omitted); *see also Marcavage*, 689 F.3d at 110 (finding probable cause to arrest for disorderly conduct where an audio recording showed that the plaintiffs were "neither courteous nor compliant" but "hostile and

noncompliant," effectively "court[ing] arrest"); (*see generally* Hazel BWC 2 (depicting Plaintiff's arrest on a public sidewalk and recording Plaintiff referring to Ballen and Hazel as a "bitch," "bitch ass," and "pussy" and using other obscene and profane language); Hazel BWC 3 (same); Villegas BWC 3 (same).) Further, Defendants present conclusive evidence that at least two onlookers stopped to watch Plaintiff's antics. (*See* Villegas BWC 2 20:24:14–20:24:29 (showing an unidentified person on a bicycle slowing to watch Plaintiff's interaction with the police); Hazel BWC 2 20:24:14–20:24:29 (same); Villegas BWC 3 20:34:08–20:34:12 (showing an unidentified individual in a red sweatshirt walking by and slowing down to watch the events unfold).) "[T]he fact that Plaintiff's use of obscenities attracted the attention of at least one neighbor made it objectively reasonable [for Defendants] to believe that [Plaintiff's] conduct went beyond an 'individual dimension' and that Plaintiff had the requisite intent for disorderly conduct." *Smith*, 2021 WL 4267525, at *10 (citation omitted); *see also Weaver*, 944 N.E.2d at 637 (finding it reasonable to infer that the defendant's conduct could have "reached the point of a 'potential or immediate public problem'" when the arresting officer "warned [the] defendant on multiple occasions to cease his conduct and leave the area [and] [r]ather than heed these warnings, [the] defendant became increasingly agitated and belligerent, repeatedly shouting obscenities at his wife and the officer" (quoting *People v. Munafo*, 406 N.E.2d 780, 783 (N.Y. 1980))); *Tobias v. Cnty. of Putnam*, 191 F. Supp. 2d 364, 374–75 (S.D.N.Y. 2002) (finding it reasonable for the defendant officers to believe that the plaintiff intended to commit disorderly conduct when he used "profanities" in speaking to the officers and "attracted the attention [of] at least one neighbor").

In sum, the undisputed facts and record evidence establish that it was reasonable for Defendants to believe that Plaintiff's behavior leading up to his arrest constituted disorderly

conduct. *See Uzoukwu v. Krawiecki*, No. 10-CV-4690, 2016 WL 6561300, at *5–6 (S.D.N.Y. Nov. 4, 2016) (finding the defendants had probable cause to arrest the plaintiff for disorderly conduct when he was "screaming, yelling, [and] cursing," and "flailing his arms" in a public playground); *Weaver*, 944 N.E.2d at 637 (finding the jury had sufficient evidence to conclude the defendant was guilty of disorderly conduct when "over a short period of time, [the] defendant's conduct escalated into a very vocal and aggressive confrontation" and the defendant became increasingly agitated and belligerent after being warned to cease his conduct). Accordingly, the Court grants Defendants' Motion with respect to Plaintiff's false arrest claim.

2. Malicious Prosecution

"To state a [Section] 1983 malicious prosecution claim, a plaintiff 'must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 238 (S.D.N.Y. 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)). To state a claim for malicious prosecution under New York law, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quotation marks and citation omitted). In addition, to prevail on a cause of action for malicious prosecution under Section 1983, the plaintiff must establish that "there was a . . . sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000); *see also Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *10 (S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious prosecution claim, however, to state a

federal malicious prosecution claim under [Section] 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights.").

Defendants argue that the existence of probable cause is a complete defense to Plaintiff's malicious prosecution claim. (Defs.' Mem. 7–8.) Indeed, "[j]ust as probable cause is a complete defense to a claim of false arrest, 'continuing probable cause is a complete defense to a constitutional claim of malicious prosecution.'" *Walker*, 664 F. Supp. 3d at 516 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)); *see also Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" (citation omitted)). "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020) (alterations omitted). "The Second Circuit has clarified that probable cause for a malicious prosecution claim means probable cause to believe that [the prosecution] could succeed[.]" *Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)) (quotation marks omitted). The Second Circuit has also cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted," because in a malicious prosecution action, "[o]nly the latter kind of probable cause is at issue[.]" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). Thus, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

As discussed above, *see* supra Section II.B.1, the undisputed facts show that Defendants had probable cause to arrest Plaintiff. "Absent intervening circumstances, probable cause

sufficient to justify an arrest is also treated by courts as probable cause sufficient to justify a prosecution." *Da Mata v. City of New York*, No. 21-CV-155, 2023 WL 112449, at *11 (S.D.N.Y. Jan. 5, 2023) (citing *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 452 (S.D.N.Y. 2018)). There is no indication of any intervening circumstances "between [Plaintiff's] arrest and the initiation of prosecution that negate[] probable cause[.]" *Da Mata*, 2023 WL 112449, at *12 (quotation marks omitted) (quoting *Medina v. City of New York*, No. 20-CV-797, 2021 WL 1700323, at *4 (S.D.N.Y. Apr. 29, 2021)). In fact, in response to Defendants' request for summary judgment on Plaintiff's malicious prosecution claim, Plaintiff simply reiterates his argument that Defendants lacked probable cause to arrest him in the first place. (*See* Pl.'s Mem. 2 (asking the Court to denying summary judgment his malicious prosecution claim because Plaintiff "disputes probable cause for the [underlying disorderly conduct] charge").) Accordingly, Plaintiff's malicious prosecution claim is also foreclosed by the undisputed evidence of Defendants' probable cause to arrest him. *See Caraballo v. City of New York*, 726 F. Supp. 3d 140, 161 (E.D.N.Y. 2024) (granting summary judgment on a malicious prosecution claim where the court "concluded that probable cause existed at the time of [the plaintiff's] arrest" and the "plaintiff ha[d] pointed to no evidence evincing the dissipation of that probable cause" (citing *Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014) (summary order))), *on reconsideration in part sub nom. Caraballo v. Surriga*, No. 21-CV-285, 2024 WL 2701644 (E.D.N.Y. May 24, 2024); *Da Mata*, 2023 WL 112449, at *12 (granting summary judgment on a malicious prosecution claim where plaintiff did not adduce any evidence that defendants "ha[d] any evidence undermining probable cause for the . . . offense with which [the] [p]laintiff was charged).

Even if the Court found that intervening facts undermined probable cause for Plaintiff's prosecution, Plaintiff has not provided evidence that his disorderly conduct case has been terminated in his favor as required to succeed on a malicious prosecution claim. *Dettelis*, 919 F.3d at 163–64. In fact, Defendants represent that Plaintiff's disorderly conduct case remained pending as of January 2026, and the Parties agree that Plaintiff unsuccessfully moved to have the case dismissed in October 2025. (Def.'s 56.1 ¶¶ 41–43; Pl.'s 56.1 ¶¶ 41–43.)

Because the Court finds that there was probable cause, and because probable cause is a complete defense to Plaintiff's false arrest and malicious prosecution claims, the Court does not reach Defendants' arguments as to the Village's *Monell* liability or Hazel and Ballen's qualified immunity. *See Franks v. City of New Rochelle*, No. 24-CV-539, 2025 WL 2711281, at *8 (S.D.N.Y. Sept. 23, 2025) (declining to reach the defendants' arguments on qualified immunity and *Monell* liability for false arrest and malicious prosecution claims after finding the individual defendants had probable cause to arrest and prosecute the plaintiff); *Roland v. City of New York*, No. 20-CV-5392, 2024 WL 2832691, at *27 (S.D.N.Y. June 3, 2024) ("The court concludes that it need not address whether [the] defendants are entitled to qualified immunity as to [the] plaintiff's malicious prosecution claim because there was probable cause to prosecute [the] plaintiff." (collecting cases)); *Hernandez v. Cnty. of Nassau*, No. 17-CV-1646, 2022 WL 513929, at *8 n.12 (E.D.N.Y. Feb. 20, 2022) ("Because the [c]ourt finds there was probable cause to arrest [the] [p]laintiff, it declines to consider whether [the] [d]efendants were entitled to qualified immunity.").

## III. Conclusion

For the reasons set forth above, Defendants' Motion is granted. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 34, enter judgment for Defendants, and close the case.

SO ORDERED.

Dated: September 11, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge